453 So.2d 1300 (1984)
Robert Joseph BARHAM
v.
KLUMB FOREST PRODUCTS CENTER, INC. and Home Insurance Company.
No. 54316.
Supreme Court of Mississippi.
August 15, 1984.
Crockett Lindsey, Lindsey & Wood, Gulfport, for appellant.
Kenneth G. Perry, Jim Mixson, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from an order of the Circuit Court of Harrison County affirming an order of the Workmen's Compensation *1301 Commission dated June 30, 1981. The order of the Workmen's Compensation Commission affirmed an order of the Administrative Law Judge which granted the claimant, Robert Joseph Barham, temporary total disability from October 1, 1979 through October 9, 1979. Feeling aggrieved by the failure to be awarded any permanent partial disability benefits, Barham now brings this appeal and assigns as error the following:
That the Administrative Judge and Commission erred in finding that Claimant reached maximum medical recovery on October 9, 1979, and that subsequent to October 9, 1979, the Claimant did not suffer any job-related disability or loss of wage-earning capacity, and that the Claimant's present disability is solely the result of his pre-existing underlying disease process.
Robert Joseph Barham is a 53-year old manual laborer. For approximately ten (10) years prior to October 1, 1979, he had worked for the Klumb Lumber Company. On that date he arrived at work at 7:30 a.m. feeling good. He began picking up metal straps lying around the lumber yard at that time. These are light metal bands used to hold stacks of lumber together. At approximately 9:00 a.m. Barham was instructed to restack a group of 4 x 4 x 8 cedar posts. After Barham had been stacking lumber for approximately one-half hour he got a pain in his chest. He stopped work and went to the restroom then came back to stack lumber. At that point the pain increased and was accompanied by a burning sensation in his chest and left arm. He went to the office where he saw his supervisor, Pat Ryan. Ryan told him to rest. The pain worsened and Ryan instructed Barham to go to the hospital. Instead of driving directly to the hospital, he drove to his home a mile and one-half away and had his wife take him to their family physician, Dr. Quigley. Dr. Quigley performed some tests and called for an ambulance to take Barham to the hospital. Barham was admitted to the intensive care unit. He stayed in the hospital approximately a week.
Barham testified that he had not been feeling well since he left the hospital. He has trouble breathing and tires easily. He is unable to walk very far and although he attempted to return to work, he was unable to perform the tasks assigned to him and was laid off.
Barham stated that he did not have any of the forementioned physical ailments or limitations prior to October 1, 1979 when he became ill at work. Over the last twenty (20) years he has had a problem with fainting but this has never occurred at work. Barham's supervisors, Pat Ryan and Lowery Anderson, corroborated his testimony that he had never been under any physical limitation. Ryan described Barham as "an extremely good employee" and stated he would hire him again if he were able to do the work. Anderson referred to Barham as "very reliable" and testified that he wished all of his workers were as faithful and reliable.
Dr. Hugo Nievas, a cardiologist, testified by way of deposition. He performed a stress test on Barham on November 14, 1979. Dr. Nievas stated that Barham had no history of heart problems. He diagnosed Barham as having an acute coronary insufficiency. He stated this was closer to a heart attack than mere ischemia alone. The doctor did state though that Barham had not had a heart attack and that there was no permanent damage indicated by a cardiac enzyme test. All changes as a result of a coronary insufficiency are reversible according to Dr. Nievas.
Dr. Nievas further testified that there was a causal connection between Barham's work and his illness on October 1, 1979. Dr. Nievas said that Barham had a coronary disease and that exertion would cause an imbalance in his oxygen supply. He further stated that Barham's condition may eventually produce a heart attack and that Barham should perform no strenuous physical *1302 activity. In Dr. Nievas' opinion Barham may eventually require a by-pass.
Dr. Nievas concluded that it is possible that Barham had coronary artery disease before October 1, 1979 but that he had not had a heart attack on that date. He again stated that there was no permanent damage to Barham's heart. In Nievas' opinion Barham's employment had nothing to do with his present disability. In his words, Barham had fully recovered from acute coronary insufficiency by the time he left the hospital on October 9, 1979. Nonetheless, in his opinion, Barham had physical limitations as a result of the underlying coronary disease.
Edna Irene Barham, the claimant's wife, testified that the morning of October 1, 1979 when her husband left for work he was feeling good. When he came home from work and told her that he had been told to go to the hospital, he was hot, sweaty and "about to collapse." She testified that now her husband tires easily and is unable to even mow the family lawn. She stated that he had never had these problems before the October 1, 1979 incident at work.
Barham argues that the administrative law judge and Workmen's Compensation Commission erred in finding that he had reached maximum medical recovery on October 9, 1979, the day he was released from the hospital. He also argues that the findings of fact that he did not suffer any job-related disability or loss of wage earning capacity and that his present disability is solely the result of pre-existing underlying disease were in error. In reviewing questions of fact the standard of review this Court has consistently applied is that where there is substantial evidence to support the order of the Workmen's Compensation Commission, this Court will not disturb its findings of fact. Mississippi Research Development Center v. Dependants of Shults, 287 So.2d 273 (Miss. 1973); Wiggins v. Knox Glass, Inc., 219 So.2d 154 (Miss. 1969); Merchants Co. v. Moore, 197 So.2d 791 (Miss. 1967).
The central issue is whether the facts of this case bring it within the rule of Rathborne, Hair and Ridgeway Box Co. v. Green, 237 Miss. 588, 115 So.2d 674 (1959). In that case the claimant had suffered an abdominal injury at work. Upon a worsening of his pain, surgery was performed. During surgery it was determined that his spleen was diseased. His physicians testified that the surgery and the injury at work temporarily aggravated the disease. They were uniformly of the opinion that after the claimant's recovery from surgery any further disability was a product of the disease, and not the work-related injury. In stating the rule to be applied in such cases, Justice Gillespie wrote for the Court:
The rule in this State is that when a pre-existing disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable. A corollary to the rule just stated is that when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.
237 Miss. at 594, 115 So.2d at 676.
The rule in Rathborne was reaffirmed in M.T. Reed Construction Co., et al v. Garrett, 249 Miss. 892, 164 So.2d 476 (1964). However, the Court in that case refused to apply the Rathborne rule. The claimant was a carpenter who experienced pains in his chest and arms. He was diagnosed by a cardiologist who determined that he had arteriosclerotic heart disease, and angina pectoris and coronary artery insufficiency. He stated that there had been no heart attack. Opposing medical views were presented by two specialists who testified that in their opinion the claimant had both coronary artery disease and a healed heart attack which was incurred when the claimant became ill at work. The cardiologist *1303 was of the opinion that the claimant's coronary insufficiency had been aggravated by his work but that the aggravation had completely subsided. The Court held that the overwhelming weight of the evidence was against this opinion. The testimony of the other specialists, indefinitiveness of laboratory and other tests, and the fact of functional disability after the injury where none had existed before although the coronary artery disease had been pre-existing, were all factors which contributed to this holding. The Court then modified the Rathborne rule by adding that where there is only slight evidence of a temporary aggravation, and the great weight of the evidence indicates a permanent aggravation of a pre-existing disease the Rathborne rule does not apply.
In Youngblood v. Ralph M. Parsons Co., 260 So.2d 188 (Miss. 1972), this Court again refused to apply the Rathborne rule. Rarely do the facts of a case so closely parallel binding precedent as do the facts of the case sub judice with the facts in Youngblood. There the claimant was a carpenter's helper who was performing manual labor when he experienced severe chest pains. The only physician to testify concerning the nature of the claimant's injury and his prognosis was Dr. Maier. Dr. Maier diagnosed the claimant as having experienced an acute myocardial ischemia, the failure of the heart to be supplied with sufficient blood. This ischemia resulted from an underlying disease of arteriosclerosis. There the Workmen's Compensation Commission applied the Rathborne rule in Rathborne and held that the claimant was not entitled to permanent disability because once his injury from the ischemia had been healed, his continuing disability was the result of the underlying disease. In reversing, Judge Inzer wrote for the Court:
It is clear from the evidence in this case that claimant established a compensable injury and the commission properly so found. It is also clear as a result of this injury claimant is permanently disabled to perform the same kind of work that he was doing prior to the injury. Having established a compensable injury and its continuance, the burden of proof was upon the employer-carrier to show not only a pre-existing infirmity which contributed to the results following the injury, but also the degree to which it contributed to the permanent disability. The doctor was certain that claimant had arteriosclerosis, which everyone has to some degree. However, we are of the opinion that his testimony does not substantiate the finding that claimant's present disability is entirely due to his pre-existing arteriosclerosis. Here we have a case of no functional disability prior to injury with the undisputed fact of functional disability after the injury, although the same infirmity existed before and after. Where, as here, the facts are undisputed, the legal effect of the evidence and the ultimate conclusions drawn by the commission from the facts are questions of law. The commission was manifestly wrong in holding that claimant's present permanent disability is entirely due to his pre-existing infirmity. Even though it might be said that this is a doubtful case, the doubt should be resolved in favor of compensation so that the purpose of the act may be carried out. M.T. Reed Constr. Co. v. Garrett, 249 Miss. 892, 164 So.2d 476 (1964).
260 So.2d at 190.
In the instant case, just as in Youngblood, the claimant had no history of functional disability prior to the incident at work. It is not disputed that following that incident the claimant has suffered a continuing disability. As we held in Youngblood the legal effect of this evidence and the ultimate conclusions to be drawn therefrom are questions of law. We hold that the Commission was manifestly wrong in finding that Barham's present permanent disability is entirely due to his pre-existing disease. As in Youngblood, we recognize that the facts presented make *1304 this a very close case. As we have frequently stated, in doubtful cases the doubt should be resolved in favor of compensation so that the purpose of the Workmen's Compensation Act may be carried out. M.T. Reed Construction Co. v. Garrett, supra; Youngblood v. Ralph M. Parsons Co., supra.
Therefore, based on all of the foregoing, we hereby reverse and remand this cause to the Workmen's Compensation Commission for the purpose of determining the degree of Barham's permanent disability to be apportioned in accordance to the degree that his pre-existing disease contributed to his disability.
REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.