633 So.2d 1006 (1994)
MARSHALL DURBIN COMPANIES and Liberty Mutual Insurance Company,
v.
James H. WARREN.
No. 91-CC-1133.
Supreme Court of Mississippi.
January 27, 1994.
Rehearing Denied March 31, 1994.
*1007 W. Scott Collins, Mitchell McNutt Threadgill Smith & Sams, Tupelo, for appellant.
John R. Coleman, Tupelo, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the Court:
This appeal arises from the October 9, 1991 judgment of the Lee County Circuit Court which reversed the Workers' Compensation Commission order of October 25, 1989. The Commission order affirmed the administrative judge's finding that James H. Warren, due to his on-the-job injury, was entitled to temporary total disability. The Commission, however, amended the award of temporary total disability benefits finding that Warren had reached maximum medical improvement and that he suffered no permanent disability. Circuit Court Judge Frank Russell reinstated the ruling of the administrative judge and held that the Commission's findings were erroneous. The Employer and Insurance Carrier have now appealed to this Court and raise the following issue on appeal:
The findings of the Workers' Compensation Commission are supported by substantial evidence and the Circuit Court erred in reversing the Commission.

I.
This case involves an all-too-familiar workers' compensation story. The employee, James H. Warren, a truck mechanic, suffered a back injury on August 28, 1986, in an admittedly compensable truck collision. He was taken to the emergency room where he was examined by the company doctor, Dr. Lawrence Brisco. He was discharged, given medication, and treated by Dr. Brisco thereafter as an outpatient. Within a few days after the accident, Warren returned to his job and worked, painfully performing his duties until six months later when the back pain, leg pain and numbness became unbearable.
Ultimately, on November 14, 1988, Dr. Samuel E. Hunter performed surgery on Warren removing two ruptured discs. Dr. Hunter causally related the ruptured discs to the compensable injury of August 28, 1986. He was the only doctor to physically see the ruptured discs. Dr. Hunter concluded that Warren was temporarily and totally disabled *1008 from the date of the injury through February 28, 1989, the date Warren was last in his office for post-operative examination. Dr. Hunter was deposed after the conclusion of the hearing before the administrative judge, but his testimony through deposition was received into evidence by the full Commission.
Warren sought Dr. Hunter's services on the recommendation of Dr. John McFadden, a pain specialist, who had treated him for a previous back injury in 1983. Dr. McFadden examined Warren in February, 1988, and placed him on anti-inflammatories and pain medication. He diagnosed Warren as suffering from a disc injury. After he administered several tests and procedures to reduce the pain, Warren failed to improve. Thereafter, McFadden performed tests which revealed the disk to be completely ruptured. He testified that Warren could only sit or stand for a short period of time without experiencing increasing pain and any type of lifting or activity increased his pain.
Warren had previously seen three neurosurgeons and a neurologist who conducted a battery of diagnostic tests and examinations and concluded that there were no objective findings to support the back pain. The initial neurosurgeons treated Warren conservatively. They classified Warren ready to return to his job and perform all of his duties without limitation. None of the four experts, however, examined Warren once the ruptured discs were discovered.
Warren had earlier seen Dr. Thomas McDonald, a neurosurgeon, who diagnosed his condition as "back and neck pain." Dr. McDonald classified him as temporarily and totally disabled. Following several office visits and physical therapy, he discharged Warren on April 28, 1987, and concluded that he was able to return to work. Dr. McDonald testified through his deposition that Warren informed him that his pain was partly due to the use of a garden tiller (a fact vehemently denied by Warren). He concluded that Warren had recovered from the "soft tissue" injury with no permanent disability although Warren was still having neck, back and leg pains. Warren was later terminated from his employment for unrelated reasons.
On February 26, 1988, Liberty Mutual's claim supervisor filed a B-31 (Report of Payment and Settlement Receipt) initiating commission action. The B-31 showed total costs of $4,648.41, including compensation of $560.00 for four weeks of temporary total disability between April 5, 1987, and May 4, 1987. Warren, without a job and still suffering back and leg pain, employed counsel and, on March 22, 1988, filed a motion to controvert. The employer and carrier answered, denying Warren suffered from any disability. They claimed, as an affirmative defense, an apportionment for a previous back injury incurred by Warren in 1983. They also claimed the occurrence of an intervening cause.
Warren attempted to work for a construction company in the months of August, September and October of 1987; however, because of his back problem, he was unable to perform the necessary tasks. This, being his last work, ended in November 1987.
The hearing was conducted on October 13, 1988, a month before Warren had the ruptured discs surgically removed. Thereafter, Tulane Posey, Administrative Judge, entered his findings of fact, concluding that Warren was temporarily totally disabled from the last day he worked in November, 1987, until at least the hearing of October 13, 1988. He held that Warren had not reached maximum medical recovery at the time of the October 13, 1988, hearing. The administrative judge lastly concluded that it was too early to ascertain whether Warren's pre-existing back injury might be a material contributing factor to his condition.
The employer and carrier were ordered to pay compensation to Warren in the form of reasonable and necessary medical services and temporary and total disability benefits at the rate of $140.00 a week from the last day Warren worked in November, 1987, until he reached maximum medical recovery, or at least until October 13, 1988. A future hearing was also ordered to determine the extent and degree of permanent disability and/or loss of wage-earning capacity, if any, after Warren reached maximum medical recovery.
*1009 The full Commission entered its order of October 25, 1989, affirming in part, amending in part and reversing in part the order of the administrative judge. The Commission held that Warren had not met the burden of proof regarding the causal connection between the medical disability to his lower back and the admittedly compensable truck accident of August 28, 1986. The Commission, apparently ignoring the overwhelming proof of Warren's two ruptured discs, found that Warren had reached maximum medical recovery by April 28, 1987, and sustained no permanent occupational disability as a result thereof. The Commission finally determined that the November, 1988, surgery which removed two ruptured discs from his back did not relate to the compensable injury of August, 1986.
The Commission then ordered that the employer and carrier pay Warren temporary total disability benefits at the rate of $140.00 per week from August 28, 1986, until April 28, 1987, with proper credit for any compensation already made to Warren. Medical services and supplies were also to be paid from the date of the injury until January, 1988. This, however, did not include the charges of Dr. McFadden and Dr. Hunter.
To support the Commission's conclusion, we must reject the visible evidence of the two ruptured discs surgically removed and Warren's uncontradicted testimony as well. We conclude that the circuit court did not err in reversing the Commission order, and, accordingly, affirm the lower court's reinstatement of the administrative judge's award.

II.
It is fundamental that the burden of proof of affirmative defenses rests squarely on the shoulders of the one who expects to avoid liability by that defense. Dunn, Mississippi Workmen's Compensation, § 266 (3d ed. 1982). See Hale v. General Box Mfg. Co., 235 Miss. 301, 317, 108 So.2d 844, 852 (1959). In this case, the employer and carrier plead not only apportionment but also intervening cause as affirmative defenses. Marshall Durbin Companies and Liberty Mutual Insurance Company, therefore, have the burden of proving the affirmative defense of intervening cause. The record is barren of any proof Warren received any injury other than the one he received while driving a Marshall Durbin truck on August 28, 1986. The only hint of another subsequent cause of Warren's back injury was Dr. McDonald's off-handed and unsolicited remark that Warren had used a garden tiller. Dr. McDonald used that reason as the basis for reclassifying Warren as ready to return to work without disability. The employer and carrier made no effort to shoulder the burden of proving an intervening cause, and Dr. McFadden's testimony eliminated Warren's pre-existing back injury as a basis for apportionment.
Immediately following his August 28, 1986, injury, Warren was afforded medical services by the employer and carrier. Several months after he returned to work and was unable to continue to perform the duties because of his back injury, he was paid four weeks of temporary and total disability compensation. These facts underscore the legal responsibility placed upon the employer and carrier to prove the affirmative defense of intervening cause. "Once it is shown that a disability was produced by an injury and that the employee continues to be disabled, the presumption is that the disability continues to be causally related to the injury, and the burden of proof is upon the employer to show that the continuing disability is due to some other intervening cause or pre-existing condition for which he is not responsible." Dunn, Mississippi Workmen's Compensation, § 166 (3d ed. 1982).
We conclude that the employer and carrier failed to prove Warren suffered any disassociated intervening injury which caused the ruptured discs, their surgical removal and the resulting disability. The full Commission committed manifest error when it failed to require the employer and carrier to meet the burden of proof of that affirmative defense.

III.
Our scope of review on appeal is limited to a determination of whether the Commission's findings of fact and order are supported by substantial evidence. The Commission's *1010 order will be reversed only if found to be clearly erroneous and contrary to the overwhelming weight of the evidence. Smith v. Container General Corp., 559 So.2d 1019, 1021 (Miss. 1990); Quitman Knitting Mill v. Smith, 540 So.2d 623, 626-27 (Miss. 1989).
In Johnson v. Ferguson, 435 So.2d 1191 (Miss. 1983), this Court reversed the Commission in another case involving a ruptured disc and found:
When an expert's opinion is based upon an inadequate or incomplete examination, that opinion does not carry as much weight and has little or no probative value when compared to the opinion of an expert that has made a thorough and adequate examination.
* * * * * *
... The only credible evidence presented to the commission was the second deposition of Dr. (Number 2). That deposition was taken after the rupture had been discovered ... and surgically confirmed and repaired ... Dr. (Number 1)'s testimony in no way discredited Dr. (Number 2)'s opinion since Dr. (Number 1) has not examined Johnson since before the existence of the herniated disc was confirmed. There simply was no credible proof to contradict Dr. (Number 2)'s opinion that:
Since this patient's symptoms have persisted in an unremitting way since his work injury of 1975, according to the medical history obtained, the ruptured disc found and operated on by me was caused by the job injury of 1975.
Johnson, 435 So.2d at 1195.
When there exists a conflict between expert scientific testimony and fact testimony, the trier of fact must ascertain the relative weight of each. As a universal practice, proof of facts weighs more heavily than contrary opinions thereto. Opinion evidence has little probative value when placed in strife with physical facts and, consequently, opinion evidence should not be viewed as enough to establish a conflict in the evidence. 32 C.J.S. Evidence § 572(2), at 684-87 (1964).
Perhaps this Court most artfully articulated the weight of expert testimony versus fact testimony in Johnson wherein we stated:
An apt analogy might run like this. The trier of the facts is charged to determine how many teeth are in a particular horse's mouth. One expert horse dentist says it's 36. Yet he acknowledges that he has not opened the horse's mouth to make an accurate count. He opines that the horse is suffering from severe neurosis and would suffer a psychological setback if subjected to the in-mouth count. Another horse dentist, however, perseveres in the face of the horse's neurosis, opens the mouth and counts only 32 teeth. A finding of fact that the horse had 36 teeth in its mouth would not be supported by substantial evidence.
Johnson, 435 So.2d at 1196.
There does not exist substantial evidence in the record to support the Commission's findings. Clearly, the physical evidence in this case revealed that two ruptured discs were surgically removed. None of the specialists, who concluded that Warren had no ruptured discs, later examined him after the discovery of the ruptured discs was made. Their opinions in no way discount the opinions of Dr. McFadden and Dr. Hunter, the two who examined Warren once the finding was made. The contrary opinions are therefore not sufficient to establish a substantial conflict in the evidence.
It is the long-standing rule of this Court that doubtful cases must be resolved in favor of compensation, so as to fulfill the beneficent purposes of the statute. E.g., Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300, 1304 (Miss. 1984); Big 2 Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss. 1980); Evans v. Continental Grain Co., 372 So.2d 265, 269 (Miss. 1979). We conclude that the testimony of Warren, Dr. McFadden and Dr. Hunter, together with the physical finding of these doctors culminating in the surgical removal of the two ruptured discs, established sufficient causal connection between the history of the employment injury and the ruptured discs. Such substantial evidence highlights the Commission's errors. The decision of the full Commission is manifestly wrong.
*1011 We affirm the order of the circuit judge vacating the decision of the Mississippi Workers' Compensation Commission and hereby remand this cause to the Mississippi Workers' Compensation Commission for determination of compensation benefits not inconsistent with this opinion, together with an assessment of penalties and costs herein.
AFFIRMED AND REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE, and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.