# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-CC-01492-COA

**PAUL T. MCCRARY**                                                    **APPELLANT**

**v.**

**CITY OF BILOXI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/97 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT W. SMITH |
| ATTORNEY FOR APPELLEE: | MARY A. NICHOLS |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| TRIAL COURT DISPOSITION: | ALJ AND MWCC AFFIRMED; BENEFITS BARRED |
| DISPOSITION: | AFFIRMED - 4/6/99 |
| MOTION FOR REHEARING FILED: | 4/21/99 |
| CERTIORARI FILED: | 7/7/99 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.

McMILLIN, C.J., FOR THE COURT:

¶1. This is an appeal from a decision of the Workers' Compensation Commission dismissing Paul McCrary's petition to controvert as being untimely. McCrary acknowledges that his formal petition commencing a contested proceeding before the Commission was not timely filed; however, he urges that his employer, the City of Biloxi, should be equitably estopped from asserting the two-year time bar because City officials represented to him that the City would file his claim with the Commission on his behalf. The circuit court, sitting as an intermediate appellate court, affirmed the action of the Commission and McCrary perfected this appeal. We affirm the decision of the circuit court.

¶2. McCrary, a police officer for the City of Biloxi, was forced to cease his employment because of substantial emotional difficulties associated with mental depression. In a meeting with his superiors on October 10, 1993, he indicated that his depression was work-related and that it was so severe he was

disabled from performing the normal duties of his job. He claimed that his mental condition became disabling on August 18, 1993. Responsible city officials received information from McCrary as to his assertions and, acting under the reporting requirements of Section 71-3-67 of the Mississippi Code, forwarded a notice of injury commonly referred to by its form number (Form B-3) to the Commission. The Commission, in accord with standard practice, forwarded a computer-generated notice dated November 25, 1993 to McCrary acknowledging that the report of injury had been received.

¶3. The City and its carrier proceeded to investigate McCrary's claim and there is evidence in the file of considerable correspondence regarding the gathering of medical records and related activity. In January 1994, McCrary retained an attorney to represent him. This attorney informed the City and its carrier of his representation by letter. There is no indication that the attorney took any steps to formally notify the Commission of his involvement in the case until February 5, 1996, when the Commission received a brief letter from the attorney dated January 30, 1996, together with two medical reports. That letter informed the Commission that a "[r]equest for payment of past due benefits has this date been made to the carrier." Despite this activity relating to McCrary's condition, the record is clear that he was not being provided any medical benefits or work-related-disability compensation by the City's workers' compensation carrier during any of this time.

¶4. On April 1, 1996, McCrary filed a formal Petition to Controvert with the Commission. In apparent recognition of the fact that the petition was not timely, McCrary responded to Item 9 of the Petition, which inquires as to "[o]ther matters in dispute" as follows: "Whether employer should be estopped from denying claim was filed."

¶5. McCrary's sole basis for arguing for estoppel before the Commission was that, when he originally told his superior that his disabling depression was job-related, City officials told him that they would file his claim for him with the Commission. He urges that the subsequent receipt from the Commission of an acknowledgment that a report of his injury was received was enough for him to justifiably believe that an "application for benefits" within the meaning of Section 71-3-35(1) had been filed.

¶6. McCrary's reliance on something a city official may have told him as a justification to forbear from formally commencing his claim for benefits for over two years was substantially misplaced. In order to invoke the doctrine of estoppel, the asserting party must show that he has changed his position, to his detriment, in reliance upon the conduct of another. *PMZ Oil Co. v. Lucroy,* 449 So.2d 201, 206 (Miss. 1984). There is, however, substantial authority for the proposition that the reliance upon this conduct of another must be reasonable. In discussing whether an agency relationship existed under principles of estoppel, the Mississippi Supreme Court

> emphasize[d] that one may be held an agent by estoppel only when from all of the circumstances he realizes or should realize the substantial likelihood that the party suffering the loss will *justifiably* rely on the tacit representation of agency arising from his conduct. If reliance is only possible, or *if reliance is not justifiable* in view of the circumstances, *including the degree of care exercised by the party suffering the loss,* agency by estoppel should not be found to come into play.

*Alabama Great Southern R.R. v. McVay*, 381 So. 2d 607, 612 (Miss. 1980) (emphasis supplied). In the case of *Shogyo International Corporation v. First National Bank of Clarksdale,* the supreme court discussed the doctrine of equitable estoppel and said as follows:

Our law requires that when a party makes statements or engages in conduct that *reasonably* induces another party to rely upon those statements or that conduct to his detriment, the first party has a duty to respond.

*Shogyo Int'l Corp. v. First National Bank of Clarksdale*, 475 So. 2d 425, 428 (Miss. 1985) (emphasis supplied). Justice Story, in his work entitled Commentaries on Equity Jurisprudence, said that "[a] party setting up an equitable estoppel is himself bound to the exercise of good faith and due diligence to ascertain the truth." Joseph Story, Commentaries on Equity Jurisprudence § 2012 (14th ed. 1918).

¶7. Even assuming, for the sake of argument, that the city official mentioned by McCrary did inform him that the City would "file his claim" for him, we are satisfied that reliance on such a statement to sink into inactivity for a period of two years could not, by any stretch, be deemed reasonable or justifiable on these facts.

¶8. The Commission adopted the findings and conclusions of the administrative judge to support its conclusion that McCrary's petition to controvert was time-barred. In her findings, the administrative judge rejected McCrary's alleged reliance on representations from a City employee as justification for an untimely filing by saying that "[u]nder the law, however, it is the claimant's responsibility to file an application for benefits, and the two-year period is a generous length of time for this purpose. There is no evidence of fraud on the part of the City . . . ."

¶9. While there may be circumstances where principles of estoppel might properly be applied though the evidence falls short of fraud (such as in the case of negligent misrepresentation), we are yet satisfied that, no matter the circumstance, the detrimental reliance on a misrepresentation must be reasonable and, in this case, there is no arguable basis to suggest that McCrary's purported reliance could meet a reasonableness standard.

¶10. We find no basis to disturb the decision of the Commission to dismiss McCrary's untimely application for benefits. That being the case, the judgment of the circuit court upholding that decision must be affirmed.

¶11. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.**

**SOUTHWICK, P.J., COLEMAN, DIAZ, AND IRVING, JJ., CONCUR. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., BRIDGES AND LEE, JJ. THOMAS, J., NOT PARTICIPATING.**

PAYNE, J., DISSENTING:

¶12. Based on a recent decision of our supreme court adopting a substantial compliance standard with regard to procedural mandates of our tort claims act and an important parallel comparison to our worker's compensation law, I would find that the employer in the case *sub judice* is equitably estopped from denying the claimant coverage based on the facts of this case. Accordingly, I must respectfully dissent.

¶13. In *Carr v. Town of Shubuta*, 96-CT-01266-SCT (Miss. 1999), a unanimous supreme court reversed this Court's strict application of the notice provisions of the Mississippi Tort Claims Act, holding

that the substantial compliance standard of *Reaves v. Randall*, 97-CA-00972-SCT (Miss. 1998) controlled, overruling three previous decisions which required strict compliance with the notice provisions of that legislation.[1] In *Carr*, Justice McRae noted an important parallel to the requisite procedural requirements of the Mississippi Tort Claims Act and the Workers' Compensation Act:

> However, such a requirement [of notice] should not act as a barrier allowing the state to defeat totally the purpose of the act itself. Admittedly, the act is intended to limit the government's liability for tortious conduct, just as the Worker's Compensation Act was intended to limit the exposure of Mississippi employers, but it is also intended to allow for the orderly administration of legitimate claims against governments for such tortious conduct, and like the workers' compensation act, serves as an exclusive remedy for such claims.

*Carr*, 96-CT-01266-SCT (¶ 9). Further, Justice McRae, citing a decision of the Indiana Supreme Court, set out the substantial compliance standard as it applies in Mississippi:

> The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied. Thus, a notice is sufficient if it substantially complies with the content requirements of the statute. What constitutes substantial compliance, while not a question of fact but one of law, is a *fact-sensitive determination*.

*Id.* (citing *Collier v. Prater*, 544 N.E.2d 497, 498 (Ind.1989) (emphasis added)).

¶14. Therefore, given the oft-cited munificent purpose of our Workers' Compensation Act (*e.g. Marshall Durbin Companies v. Warren*, 633 So.2d 1006, 1010 (Miss.1994); *Miller Transporters, Inc. v. Guthrie*, 554 So. 2d 917, 919 (Miss. 1989); *Reichhold Chemical, Inc. v. Sprankle*, 503 So. 2d 799, 802 (Miss. 1987); *Barham v. Klumb Forest Products Center, Inc.*, 453 So. 2d 1300, 1304 (Miss. 1984)) and the supreme court's recent adoption of the substantial compliance standard with regard to the Tort Claims Act and parallel reference to the worker's compensation law, I believe that on these facts, McCrary was entitled to escape the very punitive result reached in this case.

¶15. McCrary notified his employer of his work-related injury on October 13, 1993. On that day, he completed the employee's first report of injury and the employee's selection of physician. On that same day, the employer completed and forwarded to the Commission Form B-3, the employer's first report of injury or occupational disease. McCrary claims that his supervisor told him that the claim for benefits would be filed with the Commission on his behalf. On November 10, 1993, McCrary was interviewed by the employer's claims administrator. On November 25, 1993, McCrary received an informational letter from the Commission indicating that the employer had filed a notice of McCrary's work-related injury. McCrary retained counsel to represent him in this matter, and a letter from McCrary's counsel to the employer's claims administrator notified the administrator of the counsel's involvement in the case on January 14, 1994.

¶16. One month later, McCrary's counsel was contacted via letter by the claims administrator acknowledging the receipt of the January 14 correspondence and explaining that treatment notes from McCrary's psychologist had been requested and that an independent medical examination would be arranged in the near future. On March 30, 1994, counsel for the administrator requested a medical authorization from McCrary. On August 23, 1994, the administrator's counsel requested from McCrary an authorization for release of medical records from Charter Hospital in Mobile. On September 13, 1994,

another request for a "witnessed" copy of the release was requested by the administrator's counsel. Subsequent to these requests and McCrary's compliance therewith, the administrator's counsel contacted McCrary's counsel for two more medical release authorizations after the first one was allegedly lost by the hospital.

¶17. On May 4, 1995, McCrary's counsel wrote to the claims administrator indicating displeasure with the administration of McCrary's claim, which had been pending for some time with the only positive action by the administrator and his counsel being numerous requests for authorizations for release of medical records from McCrary, which were provided. On June 7, 1995, the administrator's counsel provided McCrary's counsel with copies of the medical records collected by him in the course of investigating the claim, along with a request for reciprocation by McCrary's counsel with any medical records or reports in McCrary's counsel's possession.

¶18. On November 2, 1995, the Commission contacted the employer's claims administrator for a status report on the claim. On February 12, 1996, the Commission was notified that the employer was denying that the injury suffered by McCrary was work-related. On February 13, 1996, McCrary was notified by the Commission that the employer was denying that his injury was work-related. On March 20, 1996, McCrary's counsel received a letter from the claims administrator noting the denial of his benefits as well as the running of the two year statute of limitations.

¶19. Based on these facts, it is apparent that McCrary's reliance on his supervisor's assurance that his claim would be filed was reasonable, and that McCrary's reliance on the supervisor's assurance caused him significant detriment in his claim being barred due to the statute of limitations. Over the period in question, McCrary, through his counsel, corresponded with the employer's claims administrator and the administrator's counsel, complying with each of their requests in an effort to get the compensation due to him. For the claims administrator to have waited beyond the limitations period and then deny McCrary's benefits as non-work related smacks of bad faith on the part of the administrator. McCrary's substantially complied with the requirements of the Worker's Compensation Act and is entitled to his benefits.

¶20. I respectfully dissent.

**KING, P.J., BRIDGES AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

1. *See City of Jackson v. Lumpkin*, 697 So. 2d 1179, 1182 (Miss. 1997); *Carpenter v. Dawson*, 701 So. 2d 806, 808 (Miss. 1997); and *Holmes v. Defer*, 722 So. 2d 624, 628 (Miss. 1998).