760 So.2d 784 (2000)
ATTALA COUNTY NURSING CENTER and Mississippi Health Care Association, Appellants,
v.
John MOORE, Appellee.
No. 1999-WC-00644-COA.
Court of Appeals of Mississippi.
February 8, 2000.
*785 Betty B. Arinder, Jackson, Attorney for Appellants.
Al Chadick, III, Kosciusko, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. This is a workers' compensation case. Attala County Nursing Center and Mississippi Health Care Association appeal the decision of the Attala County Circuit Court affirming the Mississippi Workers' Compensation Commission's award of all medical benefits associated with the resolution of the claimant's work-related injury in the form of bilateral carpal tunnel syndrome and further compensate claimant for any and all indemnity benefits associated thereto. On appeal, Attala raises the following assignment of error

I. WHETHER THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION'S AWARD OF BENEFITS ON THE FINDING THAT *786 CLAIMANT HAD MET HIS BURDEN OF PROOF ESTABLISHING A CAUSAL CONNECTION BETWEEN HIS INJURY AND HIS EMPLOYMENT WITH ATTALA WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. The claimant, John Moore, was hired by Attala County Nursing Center on August 2, 1994 as a custodian. Moore's principle duties included mopping the center's floors with a heavy industrial mop, cleaning the restrooms by hand using a scrub brush, operating heavy duty buffer machine, and removing the trash, all of which were performed on a daily basis. Moore also moved various types of hospital furniture and equipment daily in order to accomplish the previously mentioned responsibilities. Prior to the instant claims, Moore had a non-work related myocardial infarction on November 25, 1995, which caused him to take medical leave from that date through August 23, 1996, after which time he worked until November 6, 1996, when he injured his right shoulder. Moore has claimed two injury dates while working for Attala. The first petition to controvert was filed in response to an injury surfacing in June of 1996. Moore asserts that this injury was caused by the repetitive nature of the tasks he performed at Attala between his date of hire on August 2, 1994 and November 6, 1996, the date he injured his right shoulder. Moore claims that the repetitive tasks culminated into the bilateral carpal tunnel syndrome he suffers today. An additional petition to controvert was also filed which indicated a shoulder injury and a right arm aggravation of his bilateral carpal tunnel syndrome. The second petition arose from an injury occurring on November 6, 1996 while Moore was attempting to move a large dinette table. As he was moving the table Moore felt something snap in his right shoulder. He began to experience continuous pain and was limited in his ability to raise his right arm above his head and to move or lift anything else.
¶ 4. Attala has admitted the November 6, 1996 compensable injury to Moore's right shoulder and benefits have been paid in that regard. However, while acknowledging that Moore does in fact suffer from bilateral carpal tunnel syndrome, Attala disputes the assertion that Moore developed the carpal tunnel as a result of his work with Attala or as a result of the November 1996 compensable shoulder injury. Therefore, the essence of the controversy before us today is not whether Moore in fact has carpal tunnel, but whether or not the carpal tunnel afflicting Moore is causally connected to the work duties he so performed while employed with Attala. The claims were heard on June 2, 1998 before an administrative law judge. The parties elected to forgo the presentation of live testimony and submitted the issue for decision on the petitions, the medical depositions, affidavits and records.
¶ 5. The resulting decision rendered on August 18, 1998 by the administrative law judge found that Moore's bilateral carpel tunnel syndrome was causally connected to his work at Attala. Attala was ordered to pay all medical benefits associated with the resolution of Moore's work-related injury in the form of bilateral carpal tunnel syndrome and to further compensate him for any and all indemnity benefits associated thereto. Attala appealed said decision to the Mississippi Workers' Compensation Full Commission. The Full Commission affirmed the decision of the administrative law judge on December 14, 1998. Attala's subsequent petition for re-hearing and request for oral argument was denied by the Full Commission. Appeal was then taken by Attala to the Circuit Court of Attala County on January 22, 1999. The Full Commission's decision was summarily affirmed by the circuit court, and its order was entered on March 26, 1999.

*787 ANALYSIS

I.

WHETHER THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION'S AWARD OF BENEFITS ON THE FINDING THAT CLAIMANT HAD MET HIS BURDEN OF PROOF ESTABLISHING A CAUSAL CONNECTION BETWEEN HIS INJURY AND HIS EMPLOYMENT WITH ATTALA WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 6. Attala and its carrier, Mississippi Health Care Association, appeal the decision of the Full Commission, as affirmed by the Circuit Court of Attala County, awarding Moore compensation for the bilateral carpal tunnel syndrome he developed as a result of the tasks he performed while employed with Attala. Attala argues that the findings of the Full Commission and the resulting decision to award Moore benefits for the carpal tunnel injury was unsupported by substantial evidence. It is further argued that Moore failed to clearly establish and present medical testimony to a reasonable degree of medical probability rather than the asserted possibility that his injury and/or disability was causally connected to his employment with Attala prior to an award of compensation. In support of said argument Attala cities to Franks v. Goyer Co., 234 Miss. 833, 838, 108 So.2d 217, 219 (1959), for the proposition that "the showing of mere possibility does not suffice to forge the causal link between accident and disability." From this proposition, Attala advances as support of the same that the medical testimony given by Moore's treating physician, Dr. Alan Freeland, failed to assign to any reasonable degree of medical probability that the working requirements at Attala caused the bilateral carpal tunnel syndrome afflicting Moore. Attala further asserts that the holding reached in Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 15 (Miss.1994), is conclusive of the treatment that Dr. Freeland's testimony should have received by the Full Commission in reaching its decision: that Dr. Freeland's medical testimony as to the causal connection between Moore's injury and disability does not rise above anything more than "mere speculation or possibility" and as such should be discounted.
¶ 7. Our standard of review in workers' compensation cases is well established. The Full Commission acts as "ultimate finder of fact," and as such "its findings are subject to normal, deferential standards upon review." Natchez Equipment Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). The instant case involves contradictory medical testimony, principally between two competent medical experts, Dr. Alan Freeland, board certified in the field of orthopedic surgery, and Dr. Michael H. Winkelmann, a board certified specialist of physical medicine and rehabilitation. The former offered testimony favorable to the claimant's cause while the latter offered opposing testimony favorable to the employer's cause. In view of the Full Commission's decision to affirm the award of compensation ordered by the administrative law judge it is reasonable to infer that the commission considered the testimony offered by Moore as more credible than that which was contradictory.
¶ 8. We are to presume that the Commission made proper determinations as to which evidence was credible, had weight, and which was not. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss.1990). Findings of fact made by the Full Commission are binding on this Court provided they are "supported by substantial evidence." Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994). We will only reverse the Commission's decision when the decision is erroneous and contrary to the weight of the evidence. Id. Under the substantial evidence rule, we are further bound from rendering a different decision than that reached by the Full Commission even though the evidence presented may lead us to conclude otherwise had we been sitting *788 as the ultimate finder of fact. Barnes v. Jones Lumber Co., 637 So.2d 867, 869 (Miss.1994). "Substantial evidence, though not easily defined, means something more than just a `mere scintilla' of evidence, [yet] it does not rise to the level of a `preponderance of the evidence.'" Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991) (citations omitted). Substantial evidence can further be said to be evidence "affording a substantial basis of fact from which the fact in issue can be reasonably inferred." Id. We apply the de novo standard of review to matters of law. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308 (¶ 12) (Miss.1997). This Court is reminded that workers' compensation law is to be liberally and broadly construed, resolving doubtful cases in favor of compensation so that the beneficial purposes of the act may be accomplished. Marshall Durbin Companies v. Warren, 633 So.2d 1006, 1010 (Miss.1994). See also Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 919 (Miss.1989).
¶ 9. Moore's petitions to controvert cover two separate dates of injury for two separate injuries. The first petition asserted a June of 1996 compensable injury, specifically the development or onset of bilateral carpal tunnel syndrome, arising from the repetitive tasks to which Moore preformed while employed as a custodian with Attala from August 2, 1994 until November 25, 1995, the date in which he suffered a non-work related myocardial infarction and took medical leave. That leave encompassed the period of time covering November 25, 1995 through August 23, 1996. Following the unrelated medical leave, Moore returned to his employment with Attala on August 23, 1996 and continued to work at full duty through November 6, 1996, when at such time he suffered a second injury, which was comprised of an injury to his right shoulder, right arm and an aggravation of the previously asserted claim of bilateral carpal tunnel syndrome. We note that the injury to Moore's right shoulder has been settled with benefits paid and is therefore of no consequence to the matter before us today. We further note that the medical testimony relied on by the Full Commission as the basis for their decision essentially consists of two differing medical opinions each addressing the question of whether or not the claim relative to the bilateral carpal tunnel syndrome is to some degree of medical probability causally related to his employment with Attala. Both parties and their respective medical experts agree that Moore, in fact, does suffer from bilateral carpal tunnel syndrome; however, as previously stated, the cause of his affliction remains an issue of dispute. Therefore, given that the testimonies of the two medical experts are in conflict, we are reminded that the Full Commission, as fact finder, was entitled to weigh the competing testimonies and render its decision accordingly provided that the acceptance of one testimony over that of another did not result in a decision which was clearly erroneous and contrary to the overwhelming weight of the evidence. Baugh v. Central Miss. Planning & Devel., 740 So.2d 342 (¶ 8) (Miss.Ct.App.1999).
¶ 10. Dr. Alan Freeland was primarily the treating physician who first saw Moore on June 26, 1997 after a referral from Dr. R.N. Gilliland who had treated him from approximately early December 1995 through the first quarter of 1997. Dr. Freeland testified by deposition. He took a patient history and noted that Moore had stated that his injury was work-related but that the pain occurred gradually over a period of time, due in large part to the mopping. He reported that his last day of work was November 12, 1996 following the right shoulder injury on November 6, 1996 involving the dinette table. Dr. Freeland ordered x-rays, an EMG, and a nerve conduction study. All tests were performed and the results showed systematic bilateral carpal tunnel syndrome, worse on the right than on the left. Based on the statements given by Moore and the results of the tests, Dr. Freeland concluded that Moore's carpal tunnel was *789 related to the repetitive tasks he performed while working at Attala. Dr. Freeland stated that all of his opinions were based upon a reasonable degree of medical probability and that Moore was temporarily totally disabled as a result of his condition from June 26, 1997, the time he first treated him. When asked if the types of tasks performed by Moore would have been the competent producing cause of his condition, Dr. Freeland stated that mopping is a type of repetitive motion which could aggravate or cause carpal tunnel syndrome. Dr. Freeland further noted that Moore had a diabetic condition and that diabetes could increase a person's susceptibility to the development of carpal tunnel syndrome. He was also presented the question of whether the period of leave time between Moore's heart injury and his carpal tunnel injury, approximately six or more months, would have some effect on his opinion regarding Moore's carpal tunnel. Dr. Freeland acknowledged that question was difficult but nevertheless stated that once carpal tunnel syndrome has manifested itself, it does not necessarily go away because one stops working. Dr. Freeland remained conclusive in his opinion that the carpal tunnel was related to Moore's employment despite acknowledging that Moore's diabetic condition could cause carpal tunnel and that he had been off work for a period of six months prior to the June 1996 carpal tunnel injury.
¶ 11. Dr. Michael Winklemann testified by affidavit at the behest the employer/carrier and first saw Moore on October 21, 1997. The history provided by Moore was consistent with that given to Dr. Freeland on June 26, 1997. Based upon his examination and evaluation of Moore's medical history, Dr. Winklemann formed the opinion that Moore had a history of an old shoulder injury and right side carpal tunnel syndrome. However, Dr. Winklemann was of the opinion that Moore's November 6, 1996 injury which involved moving the dinette table could not have exacerbated or caused the carpal tunnel syndrome unless Moore already had a contusion or fracture to the wrist area where the carpal tunnel of the canal is actually located. Dr. Winklemann concluded that in view of Moore's history, that no such contusion or fracture had taken place. He acknowledged that Moore did have some left side carpal symptomology, but that it appeared to be more of a constitutional change. He opined to a reasonable degree of medical probability that Moore's normal job activities did not cause or aggravate the carpal tunnel syndrome and felt that the types of tasks performed by Moore were not those associated with carpal tunnel syndrome aggravation. This opinion was based primarily on the fact that Moore's job activities were not of a repetitive type flexion extension of the wrist. As to Moore's diabetic condition, Dr. Winklemann noted that diabetes is a destructive type of disease in which an organ may become damaged to varying degrees and that therefore diabetic patients such as Moore were subject to a higher rate of developing carpal tunnel syndrome. He further noted that given the time period in which Moore was off work, he could say that carpal tunnel syndrome actually improves in about three to six months. Dr. Winklemann also could not find anything in his evaluation and examination which would lead him to believe from a reasonable degree of medical probability that Moore could not return to his previous employment as a custodian even from the standpoint of his carpal tunnel syndrome.
¶ 12. We are reminded that the Commission sits as the ultimate finder of fact and subject to normal, deferential standards upon review and a finding that its decision is supported by substantial evidence, we will not supplant a different decision in place of that which was reached by the Commission even though had we been sitting as the ultimate finder of fact we would have concluded otherwise. Both physicians were conclusory, albeit contradictory, in their respective opinions as to *790 the causal relationship between Moore's carpal tunnel syndrome and his employment with Attala. However, both physicians were in accord with one another with regard to the fact the Moore is a diabetic and perhaps more prone to the development of carpal tunnel syndrome. The full commission gave credence to this fact and concluded that the aggravation of the work activities assigned to Moore on a daily basis could indeed have caused his carpal tunnel syndrome. Therefore, having conducted a careful and detailed review of the medical evidence presented and the resulting conclusions rendered by the Commission in light of the same, we conclude that substantial evidence exists to justify the Commission's award of compensation. We further conclude that the Commission's decision was without error in its application of law. This assignment of error is without merit.
¶ 13. THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.