LEE, C.J.,
for the Court:
¶ 1. Albert Husley Jr. appeals from an order of the Mississippi Workers’ Compensation Commission, which affirmed the administrative judge’s finding that Fountain-bleau Management Services and American Home Assurance Company (collectively “Fountainbleau”) were not liable for indemnity. or medical benefits after June 1, 2010. Because the Commission’s decision was supported by substantial evidence, we affirm.
FACTS
¶ 2. In early 2009, Husley started work as an apartment-complex maintenance person for Fountainbleau in Tupelo, Mississippi. On March 18, 2009, while assisting with unloading a twenty-foot roll of carpet, Husley aggravated his back.[1] Husley went to the emergency room, was x-rayed and given medication, and was released the same day. The following day, Husley went back to work but was restricted from climbing stairs and lifting more than five pounds.
¶ 3. As á result of the March 18, 2009 incident, Husley was referred to Dr. Bobo,[2] a neurosurgeon. Dr. Bobo ordered an MRI; however, no significant abnormalities were found.[3] Dr. Bobo did not remove Husley from work or impose any work restrictions.
¶ 4. In April 2009, Husley sought a second opinion from Dr. Elbert White, another neurosurgeon.[4]. Dr. White reviewed the MRI and likewise released Husley to work without any restrictions.
¶ 5. Shortly thereafter, Fountainbleau terminated Husley for an unrelated matter. After his termination, Husley received unemployment benefits for several weeks.[5]
*442 ¶6. In May 2009, Husley relocated to Ocean Springs, Mississippi, and then later started work as a maintenance person at another apartment complex. On his job application, Husley indicated that he was capable of lifting fifty pounds and acknowledged that he had no work restrictions.
¶ 7. In June 2009, Husley met with his primary-care physician, Dr. Paul Pavlov. Dr. Pavlov did not remove Husley from work or impose any work restrictions. However, Dr. Pavlov referred Husley to Dr. John McCloskey, a neurosurgeon.[6] In the meantime, Husley met with Dr. Farina,[7] who ordered a second MRI in September 2009, which showed no or minimal changes from the first MRI.
¶ 8. In December 2009, Husley met with Dr. McCloskey, who referred him to Ruth Bosarge for physical therapy. At this time, Dr. McCloskey did not remove Hus-ley from work or impose any work restrictions.
¶9. On May 24, 2010, Bosarge noted that Husley had experienced increased back pain caused by more lifting and climbing at work. And on June 7, 2010, Husley called Dr. McCloskey’s office and stated that his legs were “going out on him” after lifting a heavy air-conditioning unit at work a few days prior. As a result, Dr. McCloskey removed Husley from work from June 8, 2Ó10, until June 30, 2010.[8]
¶ 10. On June 28, 2010, Bosarge noted that Husley experienced leg numbness, which caused him to fall a couple of times. Bosarge also noted Husley had done more heavy lifting at work. As a result, Dr. McCloskey removed Husley from work again on June 29, 2010, for an undetermined amount of time.
¶ 11. Although Husley had been removed from work, Bosarge sent a letter to Dr.’ McCloskey in July 2010, which informed him that Husley had nevertheless returned to work on July 6. Husley reported to Bosarge that his- leg buckled on him when he carried a five-gallon bucket of paint. As a result, Dr. McCloskey removed Husley from work again on July 20, 2010, for an undetermined amount of time. Shortly thereafter, Husley was terminated from his job, •
¶ 12: In August 2010, Husley underwent a discogram with a CT scan. Following the discogram, Dr. McCloskey informed Husley that he was a potential surgical candidate. However, Dr. McClos-key later changed his opinion and stated that Husley should consider spinal stimulation.
PROCEDURAL HISTORY
¶ 13. In January 2010, Husley filed a petition to controvert. And in July 2010, the AJ entered an interlocutory order and required Fountainbleau to pay temporary total disability benefits from June 8, 2010, until June 30, 2010, and from July 20, 2010, until Husley was released for light or full duty or until an order of the court..
¶ 14. After , a hearing on June 30, 2014, the AJ ordered recovery was barred after June 1, 2010. The AJ found that the incident on March 18, 2009, resulted in a temporary exacerbation of a preexisting condition, which was more significantly aggravated by injuries sustained in 2010, While Husley was working for a different *443 employer. More narrowly, the AJ found that there-was an intervening cause, which prevented Husley from holding Fountain-bleau liable.
¶ 15. The Commission affirmed the AJ’s decision. Husley appeals.
STANDARD OF REVIEW
¶ 16. Our standard of review here is well established:
This Court applies a limited standard of review to the decisions of the Commission. By statute, the Commission sits as the finder of fact. Therefore, it is the decision of the Commission, not that of the [AJ], which is entitled to deference on appeal.
[[Image here]]
Under our standard of review, we may not reverse the Commission’s decision unless its findings were unsupported by substantial evidence and were arbitrary and capricious. We review the Commission’s application of the law de novo.
[[Image here]]
A reviewing court commits error if it simply re-weighs the evidence and substitutes its judgment for that of the Commission. It is not the role of the reviewing court to determine where the preponderance of the evidence lies[] when the evidence is conflicting, given that it is presumed that the Commission as [the] trier of fact has previously determined which evidence is credible and which evidence is not. A Commission decision that is supported by substantial evidence may not be overturned even if, were this Court acting as the fact-finder, we would have reached the opposite conclusion.
Lifestyle Furnishings v. Tollison, 985 So.2d 352, 358-59 (¶¶ 15-17) (Miss.Ct.App. 2008) (internal citations omitted).
- ¶ 17; “Although this Court is limited to a determination of whether the Commission’s findings of fact and order -are supported by substantial evidence,'the Commission in the case at hand did not present its owii findings of fact but instead affirmed those made by the [AJ].” McDowell v. Smith, 856 So.2d 581, 585 (¶10) (Miss; Ct.App.2003) (citing Tommy Brooks Oil v. Leach, 722 So.2d 708, 711 (¶ 10) (Miss.Ct. App.1998)). Therefore, “we will instead examine the findings of fact made by the [AJ].” Id.
DISCUSSION
¶18. We have held: .
[O]nce it is .shown that a.disability was--produced by an. injury and that the employee continues to be disabled, the presumption is that the disability continues to be causally related to the injury, and the burden.of proof is upon,the employer to show, that the continuing disability is due to some other intervening cause or [preexisting] condition for which he is not responsible.
Dep’t of Agric. & Commerce v. Austin, 150 So.3d 994, 997 (¶14) (Miss.Ct.App.2014) (quoting Marshall Durbin Cos. v. Warren, 633 So.2d 1006, 1009 (Miss.1994)).
¶ 19. As stated, the AJ held that although Husley “[suffered] an injury on March 18, 2009, this event resulted in only an aggravation to his preexisting lower back condition.... Husley required only minor medical treatment until a more significant event occurred in 2010.” Thus, the AJ barred recovery after June 1, 2010, because Fountainbleau proved that there was an intervening cause.
¶ 20. The AJ found that Husley “testified that none of the physicians or healthcare providers seen between March 18, 2009[,] and June 2010 imposed any work restrictions.” Aside from the climbing and lifting restrictions imposed the day after *444 Husley’s emergency-room visit, the testimony and medical records support the AJ’s finding. Dr. McCloskey summarized Husley’s situation between March 18, 2009, and June 2010 as follows: “[The March 18, 2009 incident] seemed to put [Husley] down, but [Husley] kept fighting back. [Husley] went to work. [Husley] did something that wasn’t nearly as strenuous, and then evidently a very important aggravation of that problem occurred later.”
¶ 21. Moreover, the AJ found that Hus-ley was not removed from work until June 2010 after Husley lifted a heavy air-conditioning unit. Dr. McCloskey testified: “You could say if [Husley] hadn’t had the A/C unit thing and hadn’t been doing the increased activity at work, that he would still have been working.” Furthermore, the AJ’s finding that there were “ho recommendations for medication, [a] disco-gram, back surgeryf,] or a spine stimulator until after July 2010” is supported by the evidence.
¶22, Finally, the AJ found that after being made aware of the facts surrounding the June 2010 incident, Dr. McCloskey stated: “[C]learly [the 2010 incident] was an important event, which to me, you know, permanently aggravated his preexisting problem.”
¶ 23. Husley’s claim that the Commission’s decision was not supported by substantial evidence is without merit.
¶ 24. THE JUDGMENT OF THE WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.

. Both parties stipulated that the incident was an aggravation of a preexisting condition. A review of the record confirms that Husley had a history of back pain.

. We note that Dr. Bobo's first name does not appear in the record.

. It is unclear if Dr. Bobo ordered physical therapy.

. Unbeknownst to Husley, Dr. White was affiliated with Dr. Bobo.

. The AJ noted that an applicant for unemployment benefits must confirm that he is fit for employment.

. Husley testified that the first available appointment with Dr. McCloskey was in December 2009.

. We note that Dr. Farina’s first name does not appear in the record.

.Dr. McCloskey testified that patients could be removed from work without an office visit. We note that Dr. McCloskey saw Husley in December 2009 and then not again until September 2010.