741 So.2d 309 (1999)
FLEMING ENTERPRISES, INC. and Fidelity and Casualty Company of New York, Appellants,
v.
Douglas A. HENDERSON, Appellee.
No. 97-CC-01571-COA.
Court of Appeals of Mississippi.
April 6, 1999.
*310 Ronald T. Russell, Donald Paul Moore, Brandi C. Schwartz, Gulfport, Attorneys for Appellants.
John Finch Hester, Gulfport, Attorney for Appellee.
EN BANC
THOMAS, P.J., for the Court:
¶ 1. Fleming Enterprises, Inc. and Fidelity and Casualty Company of New York appeal to this Court the decision of the Circuit Court of Harrison County affirming in part and reversing in part the Mississippi Workers' Compensation Commission's order of August 23, 1996. From that order, the Commission ruled that the claimant, Henderson, was entitled to full medical compensation or medical expense reimbursement for medical services provided by Dr. Rayner and three surgical procedures preformed by Dr. Danielson on January 5, 1990 and April 26, 1991 and Dr. Whitecloud on April 13, 1994, respectively. In affirming in part and reversing in part, the circuit court upheld the Commission's findings of compensability of medical treatment by Dr. Rayner and Dr. Whitecloud and found no abuse of discretion in the Commission's admission and acceptance of the additional evidence proffered by Henderson to the Commission showing he was referred to Dr. Whitecloud by Dr. Danielson. The circuit court did, however, reverse the Commission's findings of compensability on Henderson's fourth and fifth surgical procedures performed by Dr. Danielson as unappealed findings in the administrative law judge's order of November 20, 1992. It is from the circuit court's ruling that Fleming brings its appeal to this Court and assign the following issues as error:
I. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION'S ORDER THAT THE MEDICAL TREATMENT RENDERED TO THE CLAIMANT AFTER NOVEMBER 20, 1992 WAS *311 REASONABLE, NECESSARY, AND CAUSALLY RELATED TO THE SUBJECT INJURY AND IN COMPLIANCE WITH THE PROVISIONS OF THE MISSISSIPPI WORKERS' COMPENSATION FEE SCHEDULE.
II. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE ADMISSION INTO EVIDENCE OF AN ADDITIONAL MEDICAL REPORT FROM DR. HARRY A. DANIELSON BY THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION AT THE FULL COMMISSION.
¶ 2. Finding error of law, we reverse the circuit court and remand this case to the Full Commission to enter an appropriate order in conformance with this opinion.

FACTS
¶ 3. Douglas Henderson suffered an admittedly compensable work related injury to his lower back during the scope and course of his employment with Fleming on September 22, 1988. Henderson initially sought treatment from Dr. Harry A. Danielson. Dr. Danielson offered a preoperative diagnosis of herniated and extruded disc L4-5 with spondylolysis of L5, spondylolisthesis L5-S1 with right sided probable herniated disc, asymptomatic. On October 8, 1988, Dr. Danielson performed what would become the first in a series of lower back surgeries. Dr. Danielson's October 8, 1988 procedure consisted of an interlaminal laminotomy and foraminotomy with left lateral and central disc excision L4-5. Dr. Danielson made a postoperative diagnosis of a large herniated disc with massive extruded fragment down the body of L5.
¶ 4. Three days after Henderson's discharge, he was readmitted for extreme lower back pain. The nerve roots around the recurrent extruded disc L4-5 had narrowed into the aberrant root canal and were causing him extreme pain. A second surgery was performed by Dr. Danielson on October 25, 1988, where an extension of the interlaminal laminotomy and foraminotomy was necessitated by the conjoined nerve root problem.
¶ 5. Henderson continued to experience persistent pain in his lower back and increased inability to get around. As a result, Henderson was readmitted for a third surgical procedure under the principal diagnosis of herniated nucleus pulposus, L-4. The surgery was performed by Dr. Danielson on November 23, 1988. Henderson continued to complain of persistent pain and inability to get around throughout 1989. In late 1989, Dr. Danielson recommended a fourth surgical procedure to correct what he opined to be a herniated nucleus pulposus L-5 with cicatrix formation with marked adhesions and scar tissue about the L-5 nerve root.
¶ 6. Fleming had either paid or reimbursed Henderson for each of the three surgeries performed by Dr. Danielson. However, upon Dr. Danielson's recommendation for the fourth surgery in late 1989, Fleming questioned the need for a fourth surgical procedure and requested that Henderson undergo an independent medical examination. Fleming referred Henderson to Dr. Richard W. Levy, neuro-surgeon. Henderson was examined by Dr. Levy on December 1, 1989, and based on his examination, Dr. Levy opined that Henderson was not in need of additional surgery on December 1, 1989, and that a fourth surgical procedure would not offer reasonable chances of success in relieving the pain. A second referral at Fleming's request was performed on December 18, 1989, by Dr. Craig M. Slater. Based on his examination, Dr. Slater also opined that further surgery would not relieve Henderson of the pain he was experiencing.
¶ 7. Despite these conclusions and Fleming's decision not to pay for the recommended fourth surgical procedure, Dr. Danielson performed a fourth surgery on January 5, 1990. On February 13, 1990, *312 Fleming filed a petition to controvert contesting the necessity of the fourth surgical procedure. Shortly thereafter, Henderson accidently fell and struck the tailbone area on the transom of his 18-foot fishing boat after the wake of larger passing vessel caused him to fall. Henderson also was struck from behind by a large wave while surf fishing in water less than waist deep in April 1991. Following the April 1991 incident, Henderson underwent a fifth surgery, total laminectomy at L4-5, performed by Dr. Danielson on April 26, 1991. However, Dr. Levy opined that the two incidents in March 1990 and April 1991 were the precipitating causes of Henderson's problem in April 1991.
¶ 8. From these facts and the medical testimony offered at the hearing to controvert, administrative law judge Martha R. Griffin issued her findings of fact and conclusions of law on November 20, 1992. First, based on what was found to be the greater weight of the credible evidence offered in this cause, the fourth surgical procedure preformed by Dr. Danielson on January 5, 1990 was not a necessary procedure and the fifth surgical procedure preformed on April 26, 1991 was necessitated by non-work-related incidents which occurred in March 1990 and April 1991. Fleming was held not responsible for payment of expenses incurred as the result of the surgeries on January 5, 1990 and April 26, 1991. The order concluded that Henderson reached his maximum medical recovery as a result of his compensable injury on January 5, 1990, the date Dr. Danielson performed Henderson's fourth surgical procedure.
¶ 9. The order concluded that Henderson's compensable accident and subsequent three surgical procedures necessitated by his compensable accident produced a permanent impairment resulting in a loss of wage-earning capacity of no less than $200 a week. Therefore, Henderson was entitled to permanent partial disability benefits in the amount of $133 a week beginning January 5, 1990 and continuing for a period not to exceed 450 weeks. The evidence failed to establish claimant suffered a pre-existing occupational disability. Finally, the administrative judge held that although Henderson's fifth surgical procedure was necessitated by independent/intervening accidents in March 1990 and in April 1991, Henderson's permanent occupational disability is solely attributable to Henderson's compensable injury and resulting three surgeries.
¶ 10. The November 20, 1992 order went unappealed. The order did, however, fail to address the issue of whether Henderson's possible future medical expenses and surgical procedures were to be compensated based on his original compensable injury or whether the subsequent independent/intervening accidents March 1990 and April 1991 severed Fleming's responsibility as to future medical expenses and surgical procedures.
¶ 11. Beginning in early 1993 Henderson underwent additional medical treatment by Dr. Rayner and a sixth surgical procedure performed by Dr. Whitecloud on April 13, 1994. Motions by the parties were filed with the Commission on the issue of the additional medical expenses incurred through Henderson's subsequent medical services and supplies and whether Fleming was responsible for payment. From those motions, the issue of payment for the additional medical services provided by Dr. Rayner and the sixth surgical procedure performed by Dr. Whitecloud was addressed in a supplemental order by Administrative Judge Griffin on October 17, 1995. In the supplemental order Administrative Judge Griffin clarified her previous unappealed order of November 20, 1992 and stated that it was her original intent that the obligation of Fleming and its carrier Fidelity cease as of January 5, 1990, due to the break in the causal chain by the unnecessary fourth surgery and the subsequent accident of March 1990 and April 1991. Therefore, Administrative Judge Griffin denied Henderson's claim against *313 Fleming for the medical services and expenses incurred as a result of treatment by Dr. Rayner and Dr. Whitecloud. From that supplemental order, Henderson petitioned for review of the supplemental order to the Commission on October 30, 1995.
¶ 12. The Commission issued an order on August 23, 1996, after hearing the matter on June 24, 1996 and making subsequent conclusions of law and findings of fact. The Commission held that despite the first three surgeries in close proximity of each other Henderson continued to experience low back and leg pain with increasing intensity as time progressed. The fourth, fifth, and sixth procedures, despite the space of time occurring between them and the original procedures for which the carrier accepted as reasonable, did not stand as separate and distinct surgeries required by new and intervening causes. Fleming was held to be liable for the medical services the claimant sought and received in relation to the severe back pain he continued to suffer. Fleming was ordered to pay for all medical services provided to claimant from the attending care and surgeries provided by the following physicians: Dr. Harry A. Danielson, Dr. Thomas Whitecloud, and Dr. Donald R. Rayner beginning prior to and after January 1990 as they relate to the claimant's lower back and leg that remain unpaid. Fleming was further ordered to provide reimbursement for all expenses submitted as paid by the claimant from the time of denial of said services. Finally, Fleming was ordered to continue to pay for and provide all medical services and supplies as the nature of Henderson's injury and the process of his recovery shall require as provided by law. From this order, Fleming appealed to the Circuit Court of Harrison County on September 6, 1995.
¶ 13. First, the circuit court could not find an absence of substantial evidence supporting the Commission's findings of compensability of medical treatment by Dr. Rayner and Dr. Whitecloud. Second, the circuit court found no abuse of discretion in the Commission's acceptance of additional evidence proffered by Henderson to the Commission showing he was referred to Dr. Whitecloud by Dr. Danielson. Third, the circuit court found that Fleming's argument about the fee schedule documentation does not require reversal, since that Commission order requires reimbursement for those expenses only "after the proper forms are presented by the medical providers for payment." In this respect, the circuit court affirmed the Full Commission's order of August 23, 1996.
¶ 14. However, the circuit court concluded that an error of law was committed in the Commission's reversal of the administrative law judge's unappealed finding that the fourth and fifth surgeries were unnecessary or were necessitated by non-work-related injuries and the Commission's finding and order that Fleming was responsible for the expenses associated with those surgeries. The circuit court concluded that since there was no petition for review of the administrative law judge's November 1992 order, the order was conclusive as to the factual determinations of lack of necessity and causal connection of those surgeries, and as to the holding that Fleming was not obligated to pay those expenses. From the circuit court's order of August 23, 1996, Fleming appeals to this Court.

STANDARD OF REVIEW
¶ 15. Our standard of review in workers' compensation cases is well settled. We are limited to a determination of whether the Commission's findings of fact and order are supported by substantial evidence. Marshall Durbin Companies v. Warren, 633 So.2d 1006, 1009 (Miss.1994). Reversal is only warranted when an order of the Workers' Compensation Commission is clearly erroneous and contrary to the overwhelming weight of the evidence. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994).
¶ 16. While on appeal from rulings of the Full Commission to this Court *314 it is our function to determine whether there exists substantial credible evidence to support the Commission's ruling. Like our circuit courts, we are not to determine where the preponderance of the evidence lies when the evidence presented to the Commission is conflicting. As the trier of fact, it is presumed that the Commission made proper determinations as to which evidence was credible and which was not. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293 (Miss.1990). Unless the Commission's decision was arbitrary and capricious, we will not tamper with the Commission findings. Georgia Pacific Corp. v. Taplin, 586 So.2d 823 (Miss.1991).
¶ 17. "[W]e are reminded that workers' compensation law is to be liberally and broadly construed, resolving doubtful cases in favor of compensation so that the beneficent purposes of the act may be accomplished." Marshall Durbin Companies v. Warren, 633 So.2d 1006, 1010 (Miss.1994). See also Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 919 (Miss. 1989); Reichhold Chemical, Inc. v. Sprankle, 503 So.2d 799, 802 (Miss.1987); Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300, 1304 (Miss.1984). We exercise a de novo review on matters of law. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308 (¶ 12) (Miss.1997).

I.

WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION'S ORDER THAT THE MEDICAL TREATMENT RENDERED TO THE CLAIMANT AFTER NOVEMBER 20, 1992 WAS REASONABLE, NECESSARY, AND CAUSALLY RELATED TO THE SUBJECT INJURY AND IN COMPLIANCE WITH THE PROVISIONS OF THE MISSISSIPPI WORKERS' COMPENSATION FEE SCHEDULE.
¶ 18. In light of this case's procedural history, specifically the unappealed November 1992 order, we feel it prudent that we begin our analysis with a discussion on the fourth and fifth surgical procedures performed by Dr. Danielson and the related medical expenses incurred as a result and the apparent ambiguity concerning Fleming's responsibility to continue providing future medical services and supplies. In that order, the administrative law judge ruled the fourth surgical procedure, performed on January 5, 1990, unnecessary and the fifth surgical procedure, preformed on April 26, 1991, necessitated by non-work-related incidents. Fleming was held not responsible for payment or expenses incurred as a result of those two surgeries, January 5, 1990 and April 26, 1991. In regard to any future responsibility for medical services and supplies, the order further, in an otherwise ambiguous fashion, ordered the following:
Pay for, furnish and provide to claimant all reasonable and necessary medical services and supplies as the nature of his injury or the process of his recovery may require as provided in Mississippi Code Annotated, Section 71-3-15 (1972), except as provided in Finding of Fact No. 1.
* * *
1). Based upon what I find to be the greater weight of the credible evidence offered in this cause, I find the surgical procedure performed by Dr. Danielson on January 5, 1990 was not a necessary procedure and find the surgical procedure performed by Dr. Danielson on April 26, 1991 was necessitated by non-work-related incidents which occurred in March, 1990 and April, 1991. Therefore, I find defendants are not responsible for payment of expenses incurred as the result of the surgeries of January 5, 1990 and April 26, 1991.
¶ 19. While not an issue on appeal, we reiterate that this order went unappealed *315 and is therefore conclusive with regard to the fourth and fifth surgical procedures performed by Dr. Danielson on January 5, 1990 and April 26, 1991, and any related medical expenses incurred as a result of those two surgeries. However, the November 1992 order is open to two different interpretations: 1) one being that any future medical services or supplies expenses incurred by Henderson are not the responsibility of Fleming due to the intervening nature of the non-work-related incidents in March 1990 and April 1991 which necessitated a fifth surgical procedure or 2) that Fleming is not responsible for the medical expenses incurred as a result of the fourth and fifth surgeries but is responsible for any future medical services and supplies preformed after the fifth surgical procedure which could be reasonably related to the original injury. Fleming, for obvious reasons, read the order to reflect the former, while Henderson, likewise, read the order to reflect the latter of the two interpretations. The dispute before us today can best be addressed by deciding the issue of whether Fleming was justified in denying Henderson further medical services and supplies in July of 1993 in reliance of the November 1992 order.
¶ 20. Following the unappealed November 1992 order, Henderson was discharged from continued care and treatment by Dr. Danielson. Henderson, on his own initiative, without referral from Dr. Danielson and without notice to Fleming, sought and obtained treatment from Dr. Rayner. Henderson began seeing Dr. Rayner in the latter part of January 1993 and continued to receive treatment from Dr. Rayner throughout 1993 and into March 1994. The treatment provided by Dr. Rayner consisted primarily of prescription pain relievers and muscle relaxers.
¶ 21. Fleming promptly paid the medical expenses incurred by Henderson for the treatment provided by Dr. Rayner until July 1993. In July 1993, Fleming denied further medical services and supplies stating that the November 1992 order was conclusive and had alleviated their responsibility to cover Henderson's future medical expenses. Fleming denied continued coverage on this basis and relied on the findings of fact in the November 1992 order that the continued difficulties suffered by Henderson were due to the intervening incidents which necessitated the fifth surgical procedure performed by Dr. Danielson on April 26, 1991. This was communicated to Henderson. As to the initial expenses incurred and paid by Fleming for Dr. Rayner's treatment in early 1993, Fleming maintains that the expenses were paid inadvertently.
¶ 22. On January 3, 1994, Henderson was referred by Dr. Danielson to Dr. Whitecloud at the Tulane University Medical Center in New Orleans, Louisiana. In his September 19, 1994 deposition, Henderson stated that the referral to Dr. Whitecloud came about after he ran into Dr. Danielson by chance and the two began discussing whether Henderson's condition had changed since Dr. Danielson had last seen him. It was during this conversation that Henderson requested the referral letter.
¶ 23. Shortly thereafter, Dr. Whitecloud began to treat Henderson in Louisiana. After a series of initial evaluations performed in Louisiana, Henderson underwent a sixth surgical procedure at the Tulane University Medical Center in New Orleans, Louisiana on April 13, 1994. Dr. Whitecloud performed an L3 to S-1 posterior spinal fusion with TSRH instrumentality with Gill laminectomy of L-5 and right posterior iliac crest bone graft. This procedure consisted of an internal fixation of the spine itself with the aid of instrumentation, pedicel screw fixation devices, consisting of screws, plates, hooks, rods and/or wires to aid in the fusion of the spine. The surgical procedure was not an approved medical procedure by the Food and Drug Administration.
¶ 24. Following Fleming's denial of continuing medical coverage in July 1993, Henderson filed a motion to compel Fleming to provide medical services and supplies *316 on August 27, 1993. Fleming filed a response on September 8, 1993, and asserted their reliance on the November 1992 order. This issue was addressed in an October 17, 1995 supplemental order by Administrative Judge Griffin.
¶ 25. Administrative Judge Griffin clarified her order of November 1992 and held that it was the intent of the order to limit Fleming's liability for medical charges to those expenses incurred prior to January 5, 1990, the date of Henderson's fourth and unnecessary surgical procedure. The order further held that any later treatment received by Dr. Rayner was unauthorized, was not by his designated treating physician and would not be the responsibility of Fleming and Fidelity. Likewise the treatment received by Dr. Whitecloud was unauthorized and not in accordance with the medical fee schedule provisions on the Mississippi Workers' Compensation Act.
¶ 26. The Commission held that Fleming, by law, was liable for the medical services the claimant sought and received in relation to the severe back pain he continued to suffer. Fleming was ordered to provide reimbursement for all expenses submitted as paid by the claimant from the time of denial of said services. Finally, Fleming was ordered to continue to pay for and provide all medical services and supplies as the nature of Henderson's injury and the process of his recovery shall require as provided by law.
¶ 27. Mississippi Code Annotated § 71-3-15 states, "The injured employee shall have the right to accept the services furnished by his employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment." Miss.Code Ann. § 71-3-15 (Rev. 1994). Dr. Danielson was Henderson's designated treating physician. It is an evident requirement of § 71-3-15 that the selection of additional treating physicians must be through a referral by the designated physician. Henderson admittedly states that he had neither written nor verbal permission to see Dr. Rayner and that he sought treatment from Dr. Rayner on his own accord without referral. From the record, we cannot conclude that Henderson followed that requirements of § 71-3-15 in obtaining the medical services of Dr. Rayner beginning in January 1993 and continuing into 1994.
¶ 28. In July 1993, Fleming communicated to Henderson that any future medical services or supplies sought by Henderson would not be paid or reimbursed. Fleming further communicated to Henderson that their denial of future coverage was based on the unappealed November 1992 order by Administrative Judge Griffin, which Fleming asserted to be conclusive of the matter. In response, Henderson filed a motion to compel Fleming to continue to pay for Henderson's medical services and supplies. Henderson continued to receive medical treatment from Dr. Rayner during the pending motions filed with the Commission. Before a ruling had been made on the issue of whether Fleming was liable for Henderson's continued medical services and supplies and without notice or authorization, Henderson sought and received further medical treatment from Dr. Whitecloud at the Tulane University Medical center in early 1994.
¶ 29. The Mississippi Workers' Compensation Commission, pursuant to § 71-3-15(3), implemented a fee schedule which was in effect during this time. The pertinent portion of the fee schedule outlining the requirements for out of state medical treatment is as follows:
4. Prior authorization must be obtained from the payer for referral to out-of-state providers. The documentation must include the following:
a. Name and location of out-of-state provider
b. Justification for out-of-state provider, including qualifications of the provider and description of services being requested.
¶ 30. Henderson, by his own admission, neither attempted to obtain prior approval *317 from Fleming or from the Commission nor did he provide the required documentation before receiving medical services and supplies from Dr. Whitecloud, an out of state provider. Henderson, admittedly without any notice to Fleming or the Commission sought and received medical treatment from Dr. Whitecloud. Henderson argues that Fleming's denial of any further medical services or supplies in July 1993 justified his non-compliance with the applicable fee schedule.
¶ 31. We cannot say that Fleming's denial of further medical services and treatment in July 1993 justified Henderson's disdain for the Commission's procedures as set forth in the fee schedule. Henderson has cited several cases in his brief to this Court where the Mississippi Supreme Court has upheld a claimant's right to secure medical services on his own elsewhere after the employer/carrier refused to provide medical services and supplies to the injured employee and that the employer/carrier should be held liable for the medical services selected by the injured employee. Thornbrough Well Servicing Co. v. Brown, 223 Miss. 322, 78 So.2d 159 (1955) (holding injured employee who asked his employer for medical assistance, and employer refused, and employee then went to physician of his own choice, employee could recover medical benefits); Central Elec. & Machinery Co. v. Shelton, 220 So.2d 320 (Miss.1969) (holding that where employee gave notice to employer of injury and employer told employee that nothing could be done for him through workman's compensation, employer had breached statute and was liable for medical treatment which was reasonable and necessary to restore employee to maximum usefulness); Roberts v. Junior Food Mart, 308 So.2d 232 (Miss.1975) (holding that employer's knowledge of employee's injury followed by the employer's failure to provide the necessary medical services sufficient to impose liability upon the employer for medical services selected by the employee).
¶ 32. However, in each of these instances the employer failed to acknowledge that a compensable injury had even occurred and refused to provide the necessary medical treatment to the injured employee from the outset. The case sub judice is readily distinguishable in that Fleming did provide initial medical treatment and services and continued to provide medical treatment and services to Henderson until the issue of continued medical treatment was concluded in the November 1992 order, albeit in an ambiguous fashion and subject to differing interpretations. We note that the administrative law judge's supplemental order of October 17, 1995 clearly supports Fleming's interpretation of the original November 1992 order despite the subsequent Full Commission's order of August 23, 1996 reversing the same. Therefore, we cannot say that Fleming was not justified in relying on the unappealed, yet ambiguous, order of November 1992 when further medical services and supplies were denied Henderson in 1993. Under this reasoning, we additionally cannot say that Fleming was obligated to seek an independent medical examination on Henderson's condition upon denying further medical coverage in July 1993, as argued by Henderson in his brief, under the circumstances before us today.
¶ 33. To his credit in asserting his position before the Commission, Henderson took the appropriate actions upon filing his motion to compel Fleming to provide continued medical services and supplies with the Commission on August 27, 1993, after Fleming's denial in July 1993. However, this does not excuse the claimant's failure to abide by the requirements of § 71-3-15 when a referral by the designated physician is desired in the case of the treatment provided by Dr. Rayner. Nor is the claimant excused from the procedures set forth under the fee schedule requirements covering out-of-state treatment and treatment which is the subject of a legitimate dispute as to its investigative or experimental nature, as was in the case of the treatment provided by Dr. Whitecloud.
¶ 34. Therefore, the August 29, 1997 order of the Harrison County Circuit Court *318 is reversed on the issue of Fleming's liability for the medical services and supplies provided by Dr. Rayner and Dr. Whitecloud. We find the Commission committed an error of law when it held that Fleming was liable for the medical services and supplies provided by Dr. Rayner and Dr. Whitecloud as a result of the July 1993 denial of further medical treatment.

II.

WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE ADMISSION INTO EVIDENCE OF AN ADDITIONAL MEDICAL REPORT FROM DR. HARRY A. DANIELSON BY THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION AT THE FULL COMMISSION.
¶ 35. Fleming argues error in admitting a medical report from Dr. Danielson into evidence at the Full Commission hearing and error by the circuit court in affirming its admission. Fleming contends that the admission of the report by the Full Commission denied them their right to cross-examination and due-process. In view of our disposition of the previous issue this assignment of error is moot.
¶ 36. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED AGAINST THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
COLEMAN, J., NOT PARTICIPATING.