KING, C.J., for the Court.
¶ 1. Kenny Sims appeals the Pontotoc County Circuit Court’s decision affirming the Mississippi Workers’ Compensation Commission’s denial of his right to reopen his previously settled workers’ compensation claims. The Commission reversed an order by the administrative law judge, finding there was no basis to justify reopening the settlement. On appeal, Sims asserts three points of error, which can be consolidated into the following issue: whether the Mississippi Workers’ Compensation Commission’s findings were supported by substantial evidence and not contrary to the overwhelming weight of the evidence or clearly erroneous. Finding no error in the trial court’s decision, this Court affirms.
PROCEDURAL HISTORY
¶ 2. Kenny Sims suffered two work-related injuries while employed by Ashley Furniture Industries as a furniture builder. Sims’ first injury occurred on February 6, 2001 and the second injury occurred on March 6, 2001. In January 2002, Sims hired counsel and filed a workers’ compensation claim with the Mississippi Workers’ Compensation Commission.
¶ 3. In October 2002, Sims filed an application for approval of a compromise settlement. This settlement was finalized on October 25, 2002. On November 4, 2002, Ashley Furniture terminated Sims’ employment and he filed a motion to reopen his workers’ compensation claims. On April 6, 2004, an administrative law judge (ALJ) held a hearing regarding the motion to reopen. The ALJ issued an order on September 16, 2004, in which the ALJ found that there had been a material change of circumstances in Sims’ condition that would justify reinstating his workers’ compensation claims to the active docket of the Commission.
¶ 4. On September 27, 2004, Ashley Furniture and its carrier, Employers Insurance Company of Wausau, filed a petition for review before the Commission. The Commission held a hearing on May 9, 2005. The Commission reversed the ALJ’s decision, finding it was contrary to the law and the overwhelming weight of the evidence and that the ALJ erred as a matter of law in finding that Sims had met his burden of proving he was entitled to reopen his previously settled claims.
¶ 5. On August 10, 2005, Sims filed an appeal to the Pontotoc County Circuit Court. The circuit court affirmed the Commission’s decision. Sims timely filed this appeal of the circuit court’s decision.
FACTS
¶ 6. Sims worked as a furniture builder for Ashley Furniture Industries. On February 6, 2001, and March 6, 2001, Sims injured his upper extremities and his left shoulder from the repetitive motions of using his nail gun to build furniture. Sims suffered from bilateral carpal tunnel syndrome, and in April 2001, he underwent carpal tunnel release on his right extremity. In October 2001, Sims underwent surgery for his left extremity. Sims received temporary total disability workers’ compensation benefits for these injuries at a rate of $316.46 a week for a total of $16,411.72.
¶ 7. Dr. Kurt Thorderson, Sims’ surgeon, found Sims’s right hand had reached *627 maximum medical improvement on October 25, 2001. Dr. Thorderson assigned a twenty percent impairment to Sims’ right upper extremity and placed a ten pound permanent restriction on the right hand, with no repetitive right hand use permitted.
¶ 8. In January 2002, Dr. Laverne Lovell began treating Sims’ upper left extremity. Dr. Lovell did not assign any restrictions to Sims’ upper left extremity and a performance evaluation revealed Sims was able to sustain light level work for eight hours a day.
¶ 9. Sims was released to restrictive duty and returned to work as a line supplier. He was unable, however, to continue performing in this position due to his injuries. He worked light duty, which involved sweeping floors for eight hours a day. The constant sweeping irritated Sims’ right hand and Dr. Thorderson placed Sims on medical leave for several weeks. Once Sims was able to return to work, his medical restrictions limited him from lifting more than ten pounds and he could not be involved in any pulling or jerking activities.
¶ 10. Sims transferred to Ashley Furniture’s sewing department and remained there from February 2002 until November 2002. He worked part-time in this department by turning pillows. In this position, Sims earned $7.85 per hour and he worked four hours a day. He previously earned between $12.00 and $21.00 per hour in the factory’s production department.
¶ 11. In October 2002, Sims filed an application for an approval of a compromise settlement. The Commission granted Sims’ request in an order executed on October 22, 2002. In the settlement, Sims received a lump sum award of $58,000, to be allocated over his life expectancy. Sims was forty-one years old at the time of settlement and was expected to live a remaining three hundred thirty-one months. This amount represented Sims’ future loss of wage earning capacity over the rest of his life expectancy. In exchange for the lump sum award, Sims agreed to release Ashley Furniture and Employers Insurance for all claims arising out of the February 6, 2001, and March 6, 2001, injuries, including any claims or injury involving Sims’ left shoulder. Sims executed a receipt and release, as well as a notice of final payment on October 25, 2002.
¶ 12. On November 4, 2002, Ashley Furniture changed the compensation method for the pillow turners from hourly wage to an incentive method based upon production. Upon being informed of the change in the method of pay computation for pillow turners, Sims immediately told his supervisor that he was unable to do the job. Subsequently, Sims was taken to the office where his employment was terminated.
¶ 18. On May 16, 2003, Sims filed a motion to reopen his workers’ compensation claim. Sims argued that his termination from Ashley Furniture, shortly after he finalized his compromise settlement, as well as the resulting loss of economic benefit, constituted a material change in circumstance that would justify reopening the claims. Sims asserted that Ashley Furniture acted in bad faith during the settlement negotiations by leading Sims to believe he would continue to work for the company after the settlement, with no loss of wage earning ability. Sims argued that he would not have entered into the settlement agreement had his employer informed him his employment would be terminated after the settlement was finalized.
¶ 14. The administrative law judge issued an order on September 16, 2004, finding Sims’ claims should be reopened. Ashley Furniture and Employers Insurance appealed this decision, arguing that the *628 ALJ’s order was contrary to the law and overwhelming weight of the evidence.
¶ 15. The Commission overturned the decision by the ALJ, finding there was no “mistake” or “change in condition” within the meaning of Mississippi Code Annotated Section 71-3-53 (Rev.2000) that would require reopening Sims’ claims.
STANDARD OF REVIEW
¶ 16. The Mississippi Workers’ Compensation Commission is the fact finder in deciding compensation cases and its findings “are binding on all appellate courts so long as the decisions are supported by substantial evidence.” McCrimon v. Red Arrow Car Wash, 859 So.2d 395, 397-8(¶ 9) (Miss.Ct.App.2003). This Court will not disturb the findings of the Mississippi Workers’ Compensation Commission unless the findings are clearly erroneous and contrary to the weight of the evidence. Univ. of S. Miss. v. Gillis, 872 So.2d 60, 64(¶ 16) (Miss.Ct.App.2003). The Commission’s orders are reviewed to determine if substantial credible evidence exists to support the Commission’s rulings. Fleming Enter., Inc. v. Henderson, 741 So.2d 309, 313 — 14(1116) (Miss.Ct.App.1999).
ANALYSIS
Whether the Mississippi Workers’ Compensation Commission’s findings were supported by substantial evidence and not contrary to the overwhelming weight of the evidence or clearly erroneous.
¶ 17. The Commission relied on the authority of Section 71-3-53, in finding Sims did not have a right to have his claims reopened. Section 71-3-53 reads, in pertinent part, as follows:
Upon its own initiative or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact, the commission may, at any time prior to one (1) year after date of the last payment of compensation ... review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.
¶ 18. Sims argues that the Commission erred in determining his termination did not constitute a significant and material change in circumstances and mistake in fact, which would require a reopening of his compensation claims. He asserts that the loss of his employment and income was unforeseeable and a significant and material change in his economic condition.
¶ 19. Sims also argues that the settlement negotiations were not entered into in good faith and his employment was fraudulent. Sims suggests that Ashley acted in bad faith, in that it created a position for him and terminated that position shortly after obtaining a settlement of his workers’ compensation claim. Sims asserts that his termination also constitutes a change in fact and/or fraud in the negotiation of that contract. Sims’ allegations of bad faith and fraud would seem to be undercut by his own testimony. In his testimony before the Administrative Law Judge, Sims indicated that (1) all of the pillow turner positions were changed from an hourly compensation basis to an incentive (production) based compensation; (2) upon being informed of the changed basis for compensation, he informed his supervisor that he was unable to do the job; (3) only after he indicated his inability to do a job which was changed from an hourly wage to pay based upon production was he terminated.
¶20. The Commission overturned the decision by the ALJ, finding there was no “mistake” or “change in conditions” within the meaning of Mississippi Code Annotated Section 71-3-53 that would require reopening Sims’ claims. The Commission found that even after it reviewed the facts *629 that were present at the time of the settlement agreement, it found that the settlement agreement was not based on any mistaken fact determination. The Commission pointed out that Sims was represented by counsel throughout the proceedings and his claims were settled for far more money than the value of his scheduled member impairment alone.
¶ 21. The Commission noted that the settlement seemed fair and reasonable at the time and in retrospect. While the Commission did consider Sims’ termination within days after the settlement agreement constituted “wholly new evidence,” the Commission found that this was not a mistake which warranted reopening of the settlement agreement. The Commission did not find any proof that Sims had a reasonable expectation of continued employment at the time he entered the settlement.
¶ 22. The Commission’s findings are supported by substantial evidence within the record. This Court does not find support that the Commission’s findings are clearly erroneous or contrary to the overwhelming weight of the evidence. This Court, therefore, is bound by the Commission’s findings of fact. Finding no error in the Commission’s denial of Sims’ right to reopen his compensation claims, the trial court’s decision is affirmed.
¶ 23. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.